UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY FLORES, HENRY ENCISO, A.C., a minor, C.C., a minor, and YOLANDA FLORES, individually and on behalf of A.C. and C.C., | ) ) ) ) | 12 C 162 |
| Plaintiffs, | ) ) | Judge Feinerman |
| vs. | ) ) ) | |
| DONALD GIULIANO, #118, JOHN FORD, #81, JUSTIN CAMP, #117, STEPHEN ROSS, #75, STEVE WITNIK, #109, DONALD KAMINSKI, #72, THOMAS HENNIGER, #77, SGT. MICHAEL JONES, #97, DANIEL VELASQUEZ, #120, THOMAS FERRIS, #114, TOMAS KLOS, #119, CHRISTIAN QUIROGA, #94, the VILLAGE OF FRANKLIN PARK, JIMMY OLLE, #443, LESLIE PRATTS, #120, COOK COUNTY, SGT. FABIANI, ROBERT ANDRIS, RALPH KIRK, and UNKNOWN AND UNNAMED STONE PARK POLICE OFFICERS, and the VILLAGE OF STONE PARK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Johnny Flores, Henry Enciso, A.C., C.C., and Yolanda Flores, individually and on behalf

of A.C. and C.C., who are minors, brought this suit against three sets of defendants: (1) the

Village of Franklin Park, Illinois, and Franklin Park police officers Donald Giuliano, John Ford,

Justin Camp, Stephen Ross, Steve Witnik, Donald Kaminski, Thomas Henniger, Sgt. Michael

Jones, Daniel Velasquez, Thomas Ferris, Tomas Klos, and Christian Quiroga; (2) Cook County,

Illinois, and Jimmy Olle and Leslie Pratts of the Cook County Sheriff's Police Department; and

(3) the Village of Stone Park, Illinois, and Stone Park police officers Sgt. Fabiani, Robert Andris,

Ralph Kirk, and unknown and unnamed Stone Park police officers. Doc. 66. The third amended

complaint, which alleges misconduct on four separate days in 2011, sets forth thirteen counts

under 42 U.S.C. § 1983 and Illinois law: (1) a § 1983 claim by Johnny against Giuliano, Ford, Camp, Kaminski, Witnik, Henniger, Ross, Olle, Pratts, and unknown and unnamed Stone Park police officers for the use of excessive force on February 5, 2011; (2) a state law claim by Johnny against Giuliano and Franklin Park for battery on February 5, 2011; (3) a § 1983 claim by Johnny against Giuliano, Ford, Jones, and Camp for the unreasonable seizure of his person on April 19, 2011; (4) a § 1983 claim by Johnny against Giuliano, Ford, Jones, and Camp for the unreasonable search of his person on April 19, 2011; (5) a state law claim by Johnny against Giuliano for battery on April 19, 2011; (6) a § 1983 claim by Johnny against Giuliano, Ford, Velasquez, and Ferris for the unreasonable seizure of his person on May 31, 2011; (7) a state law claim by Johnny against Giuliano, Ford, and Franklin Park for malicious prosecution arising out of a ticket issued on May 31, 2011; (8) a § 1983 claim by all Plaintiffs against Fabiani, Andris, Kirk, Klos, Giuliano, Quiroga, and Ford for the unreasonable search of their home on November 24, 2011; (9) a § 1983 claim by Johnny against Fabiani, Andris, Kirk, Klos, Giuliano, Quiroga, and Ford for the unreasonable seizure of his person on November 24, 2011; (10) a state law claim by all Plaintiffs against Fabiani, Andris, Kirk, Stone Park, Klos, Giuliano, Quiroga, Ford, and Franklin Park for trespass on November 24, 2011; (11) a state law indemnification claim against Franklin Park; (12) a state law indemnification claim against Cook County; and (13) a state law indemnification claim against Stone Park. *Id*. at ¶¶ 58-109. A jury trial has been set for August 18, 2014. Doc. 123. No defendant has argued that any parties or claims have been improperly joined under Rule 20(a) or that trial should be bifurcated under Rule 42(b).

Plaintiffs voluntarily dismissed their claims against Andris, Kirk, Pratts, and the unknown and unnamed Stone Park police officers. Docs. 137, 172. After discovery closed, Olle and Cook County ("Cook County Defendants") moved under Federal Rule of Civil Procedure 56 for

summary judgment on the two claims against them: the § 1983 excessive force claim (Count I) against Olle, and the state law indemnification claim (Count XII) against Cook County. Doc. 138. In addition, Giuliano, Ford, Ross, Witnik, Kaminski, Henniger, Jones, Velasquez, Ferris, Klos, Quiroga, and Franklin Park ("Franklin Park Defendants") moved for partial summary judgment on several of the claims against them. Doc. 143. Cook County Defendants' motion is denied, and Franklin Park Defendants' motion is granted in part and denied in part.

## Background

The following facts are stated as favorably to Plaintiffs, the non-movants, as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). In considering the summary judgment motions, the court must assume the truth of those facts but does not vouch for their actual truth. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012).

Before proceeding, the court addresses Cook County Defendants' contention that Plaintiffs' Local Rule 56.1(b)(3)(B) response includes "improper objections; argumentative, nonresponsive, and evasive answers; opinions, mischaracterizations of the Record, improper additional facts, unrelated to the Defendants' corresponding statement of fact, and denials unsupported by citations to relevant portions of the Record," and that Plaintiffs' Local Rule 56.1(b)(3)(C) statement of additional facts "is rife with improper legal and factual arguments, multiple facts in one paragraph, conclusions, and conjecture." Doc. 181 at 3-4. The court will disregard the portions of Plaintiffs' Local Rule 56.1(b)(3)(B) response and Local Rule 56.1(b)(3)(C) statement that fail to cite specific record material, that cite to inadmissible material, or that present argument inappropriate for a Local Rule 56.1 submission (*e.g.*, Doc. 158 at ¶¶ 39-40, 48, 57, 70, 79). *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring the non-movant to file "(3) a concise response to the movant's statement that shall contain: ... (B) a response to each

numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"*) (emphasis added); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("The evidence supporting a factual assertion must represent admissible evidence."); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial."); *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 n.1 (7th Cir. 2003); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 & n. 4 (7th Cir. 2000); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses") (citation omitted).

That said, the court notes that Local Rule 56.1(b)(3)(B) provides that the non-moving party should offer factual responses, along with record citations supporting those responses, that controvert and are fairly responsive to the movant's statements of fact. The court will adhere to local rules; it will ignore extraneous matter in Plaintiffs' Local Rule 56.1(b)(3)(B) response—meaning matters not fairly responsive to the factual assertions in the corresponding paragraphs of Cook County Defendants' Local Rule 56.1(a)(3) statement—but it will take account of facts that are fairly responsive to Cook County Defendants' assertions. *See Schwab v. N. Ill. Med. Ctr.*, __ F. Supp. 2d __, 2014 WL 2111124, at *1 (N.D. Ill. May 20, 2014) (disregarding the plaintiff's Local Rule 56.1(b)(3)(B) response to the extent it included "facts that go beyond what is fairly responsive to the corresponding paragraphs of [the defendant's] Local Rule 56.1(a)(3)

statement"); *Levin v. Grecian*, 974 F. Supp. 2d 1114, 1118 (N.D. Ill. 2013) ("If the non-movant wants to assert facts that go beyond what is fairly responsive to the movant's factual assertion, then he must do so not in his Local Rule 56.1(b)(3)(B) response, but in his 'statement … of any additional facts that require denial of summary judgment' under Local Rule 56.1(b)(3)(C)."); *Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-movant is responding, in a Local Rule 56.1(b)(3)(B) response. Rather, Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement under Local Rule 56.1(b)(3)(C) of any additional facts that require the denial of summary judgment.") (citations and internal quotation marks omitted).

With respect to Cook County Defendants' contention that Plaintiffs "bundled" multiple facts in certain single paragraphs of their Local Rule 56.1(b)(3)(C) statement, the Seventh Circuit has held that "the district court must apply Rule 56.1 in the specific context of the litigation before it and determine whether the submission at issue adequately complies with the purpose and intent of the Rule or impedes that Rule's effectiveness." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The court finds that Plaintiffs' occasional inclusion of multiple facts in single paragraphs of their Local Rule 56.1(b)(3)(C) statement (*e.g.*, Doc. 158 at ¶¶ 64-67, 71, 79, 82, 86) was not excessive and substantially complies with the letter and spirit of Local Rule 56.1.

A.      Incident of February 5, 2011

In the early morning hours of February 5, 2011, Johnny, then twenty years old, and his brother Enciso, then seventeen years old, went to a party at a motel attended by several members

of a gang called the Imperial Gangsters. Doc. 158 at ¶ 9; Doc. 173 at ¶ 4. Enciso testified that

there were four people already in the room with two cases of beer when he first arrived, and that

a fight broke out after five other people arrived. Doc. 158 at ¶¶ 10-11. Enciso testified that

Johnny was punched by a woman when he tried to block her from hitting another woman. *Id*. at

¶¶ 12-13.

Olle and Pratts, who as noted above were Cook County police officers, received a

dispatch regarding a woman screaming at a motel. *Id*. at ¶ 14. Olle and Pratts went to the motel

room door, heard yelling and screaming, knocked on the door, and yelled, "Police! Open the

door!" *Id*. at ¶ 15. Enciso testified that although he heard the police knocking, the women in the

room were screaming and fighting did not open the door. *Id*. at ¶¶ 16-17. Olle and Pratts called

the Leyden Township Fire Department and the Franklin Park Police Department for assistance.

*Id*. at ¶ 18.

After the Leyden and Franklin Park officers arrived, the Fire Department officers pried

open the motel door and kicked it in, and several officers entered in a pyramid formation with

Olle in front followed by perhaps four to six Franklin Parks officers and then Pratts. *Id*. at ¶¶ 19-

20; Doc. 186 at ¶ 51. Olle and Pratts were the only Cook County officers there, and Pratts is a

female. Doc. 158 at ¶ 20. Johnny testified that he saw approximately four to eight officers in the

motel room; Olle testified that five to ten officers in addition to himself and Pratts were there;

and Pratts testified that four to six Franklin Park officers were present. Doc. 182 at ¶ 71; Doc.

186 at ¶ 51. Neither Olle nor Pratts could identify which Franklin Park officers were present.

Doc. 173 at ¶¶ 22, 27. Giuliano and Ford stated that they were not present that night, and

Commander Konwinski of the Franklin Park Police Department confirmed from Giuliano's and

Ford's time records that they were off duty at the time. *Id*. at ¶¶ 5-8. A Franklin Park Police

Department "Call for Service" record from February 5, 2011, shows that officers Henniger and Camp arrived on the scene at 3:25 a.m. Doc. 186 at ¶ 52. Kaminski, Henniger, and Witnik have no recollection of being present at the motel on February 5, 2011; Kaminski believes that he was just a cover officer, Henniger does not know if he was present, and Witnik was not on the scene because he was the watch commander at that time. Doc. 173 at ¶¶ 9, 11, 13. Enciso was present when the police and fire officers arrived, and he does not know the names of the officers who were present; he believes that the police officers were from Franklin Park because of the color of their uniforms, but he could not be certain. *Id*. at ¶¶ 14-15. Johnny could not identify Henniger, Kaminski, or Ross by name or appearance and did not know for certain if Kaminski, Ross, Henniger, Giuliano, Ford, or Witnik were in the room. *Id*. at ¶¶ 17-18, 20-21.

When the officers entered the motel room, they saw two women fighting in the back corner and told everyone to get on the floor. Doc. 158 at ¶¶ 19, 21. Johnny knew that the officers entered because of the noise the women were making, and testified: "I'm assuming that's what caused this disturbing the peace." *Id*. at ¶ 22. Johnny saw some sheriff's uniforms, which he identified by their "tannish shirts"; he put his hands in the air and turned around and "gave [the officers] his back" to let them know that he was not aggressive. Doc. 182 at ¶¶ 54, 72. As soon as Johnny turned around, and while his hands were in the air, he was hit on the head with what he believed was a baton, but because his back was turned he could not be sure. *Id*. at ¶ 55.

Johnny did not know who hit him, but he thought that it was the first officer who entered the room—who, as noted above, was Olle—because Johnny "told him why did you hit me" and "he told me to shut the fuck up." *Id*. at ¶ 57. Johnny also testified that the officer who hit him could have been the male sheriff who handcuffed him (again, Olle) because he saw the officer's

shirt; Johnny described the male sheriff as "five-something, light complected a little chubby," and testified: "I don't think he kicked, I think someone kicked it and he must have ran in there and just hit me because he was a little guy."  Doc. 158 at ¶ 27.  Johnny further testified: "All I know [is] the one that first came in, he was about, like, five, six, five, seven.  I think he was the one that hit me with the baton. … I said five, five to five, seven.  I would say maybe—no, let's just say five, five to five, nine."  *Id*. at ¶ 26.

Johnny, who has been diagnosed with a learning disability, stated "I wish I was good at this" when asked at his deposition about the heights and weights of the various officers.  Doc. 182 at ¶¶ 75-76.  Johnny testified that he is five feet nine inches tall and that the officer that hit him was "maybe a little shorter, maybe my height," and he described one officer as six feet tall and stocky, with "brownish" hair.  Doc. 158 at ¶ 28; Doc. 182 at ¶ 77.  In fact, Olle is "a little over six-foot, like six and one-half," and weighed approximately 218 pounds at the time of the incident.  Doc. 158 at ¶ 29.  Moreover, Olle was not carrying a policeman's baton or anything that resembles a baton on the date of the incident.  *Id*. at ¶ 30.  (Plaintiffs deny this assertion from Cook County Defendants' Local Rule 56.1(a)(3) statement, but the record materials cited by Plaintiffs do not support their denial while the record materials cited by Cook County Defendants support the assertion, so the assertion is deemed admitted.)  Enciso could not identify who struck Johnny because he did not witness the incident.  Doc. 173 at ¶ 16.

After Johnny was hit, he felt "drowsy" and was thrown on the bed with his hands handcuffed behind his back.  Doc. 182 at ¶¶ 55, 58.  Olle was the officer who handcuffed Johnny, and Olle admitted that Johnny did not physically resist.  *Id*. at ¶¶ 61, 86; Doc. 158 at ¶ 35; Doc. 173 at ¶ 23.  Enciso testified that Johnny was "trying to explain what happened but the cops," who were wearing black uniforms, "grabbed him … they thought that he was like

fighting with the girls too because he was trying to spread them apart, and they threw him against the bed." Doc. 158 at ¶ 24. Olle and Pratts were both wearing uniforms consisting of dark brown cargo pants and tan polyester button down shirts. *Id*. at ¶ 25.

Johnny testified that while his face was "stuffed on the bed," he "had a knee in my back" and felt someone slap him five to eight times; because his eyes were closed, he could not see who was hitting him, but it felt like two or three people were touching him. *Id*. at ¶ 36; Doc. 182 at ¶ 64. Johnny also was struck on his left side near his kidney by someone's fist or knee, but he does not know by whom. Doc. 182 at ¶ 65. Johnny also testified that while he was on the bed with his hands behind his back, there was "[a] knee on the handcuffs with all his weight on it, kept bouncing his knee on his hands with the handcuffs clicking, clicking, clicking and getting slapped in the face … and that's why they were tight," and that "everytime he kept bouncing on them or putting more pressure on his knee," he felt the handcuffs clicking. Doc. 158 at ¶¶ 34, 37; Doc. 182 at ¶ 62. Johnny does not know which officer put his or her knee on the handcuffs. Doc. 182 at ¶ 63.

Three or more officers carried Johnny out of the room and tried to drop him on his face, and to avoid landing on his face, Johnny turned and hit his elbow. Doc. 158 at ¶ 42; Doc. 182 at ¶¶ 67-68. Johnny could see the two officers at his shoulders but could not see who was carrying his feet, and the officer that Johnny believed had hit him with a baton was one of the officers carrying him. Doc. 182 at ¶ 67. Pratts and Olle testified that Olle was the officer who took Johnny out of the room. *Id*. at ¶ 69. Olle placed Johnny in his squad car and closed the door. Doc. 158 at ¶ 44. Pratts saw Johnny bang his head more than once against the car's back window, and Johnny admitted that he hit his head once or twice against the window out of anger.

*Id*. at ¶¶ 45-46.  Ross, who arrived at the motel when Johnny was already in handcuffs, did not participate in the arrest.  Doc. 173 at ¶ 10.

Johnny did not drink that night and was not intoxicated, but he was arrested for consumption of alcohol by a minor.  Doc. 158 at ¶ 39; Doc. 182 at ¶ 78.  Johnny was transported to the Cook County lockup facility in Maywood, Illinois.  Doc. 173 at ¶ 26.  Cook County deputies in the lockup noted that Johnny had scratches on his cheeks and left elbow.  Doc. 158 at ¶ 49.  When Johnny got out of lockup, he had "a big bump" on the back of his head and "marks on [his] face, nerve damage, [and] marks on [his] wrist."  Doc. 182 at ¶ 79.

Johnny went to Gottlieb Memorial Hospital at around 11:00 p.m. on February 5, 2011—less than 24 hours after the incident—where medical personnel observed swelling and pain in his elbow and abrasions to both his wrists and cheeks, and where X-rays taken showed soft tissue swelling in his wrists and hands.  *Id*. at ¶¶ 80, 83-84.  Nurse Jennifer McCoy called 911 to request that an officer come make a report.  *Id*. at ¶ 80.  Pratts heard this request over her radio, and Cook County records show that a "Jenny" from Gottlieb reported to a radio dispatcher that "a 20 year old male was beat up by an officer at Lido at 0400 hours," that the male's name was Johnny Flores, that he "is saying that he was hit in back of head and woke up in cell," and that he had abrasions on his face and on his forearms where he had been handcuffed.  *Id*. at ¶¶ 80-81.  The officer who came to the hospital was a friend of Pratts and did not make a report.  *Id*. at ¶ 82.

Johnny pleaded guilty to "Obstruction of ID" and was sentenced to one year conditional discharge.  Doc. 158 at ¶ 53.  Since the motel incident, Johnny has felt "spikes" in his left hand from his fingers to his wrist, and the pain especially bothers him when it gets cold.  Doc. 182 at ¶ 85.  Johnny has never said anything to Enciso about either Olle or Pratts, and  Johnny never told Yolanda, his mother, that a Cook County sheriff hit him; he instead "only talked to [her]

about Franklin Park." Doc. 158 at ¶¶ 50-51. Johnny admitted that Pratts (who has been voluntarily dismissed) never touched him. *Id*. at ¶ 52.

## B.      Incident of April 19, 2011

On April 19, 2011, after pulling over Johnny for allegedly failing to stop at a stop sign, Giuliano claimed that he smelled burned cannabis emitting from the vehicle. Doc. 173 at ¶¶ 31-32. Johnny does not recall the reason for the stop and testified that Giuliano "just pulled me over for no reason. I did my stop sign." *Id*. at ¶ 36; Doc. 186 at ¶ 53. Although Johnny did not "have anything" and was not "doing anything," Giuliano had Johnny exit the vehicle and grabbed his testicles. Doc. 173 at ¶ 32; Doc. 186 at ¶¶ 54-55. Giuliano did not give Johnny a ticket and left the scene to proceed to another call. Doc. 173 at ¶ 33. A back-up officer pulled up afterward, but neither Giuliano nor Johnny can recall who it was. *Id*. at ¶¶ 34, 37. Jones was the watch commander on April 19, 2011, and neither he nor Ford was present at the stop. *Id*. at ¶¶ 28-30.

## C.      Incident of May 31, 2011

On May 31, 2011, Giuliano was on patrol with Ford in an area known for gang activity when they passed by Johnny and his companions. *Id*. at ¶ 42. Johnny and his companions were not smoking marijuana that day, but Giuliano stated that they all had bloodshot eyes and smelled of burned cannabis. *Id*. at ¶ 43; Doc. 186 at ¶ 59. One of the companions, John Pack, was in possession of a pipe with burned cannabis. Doc. 173 at ¶¶ 41, 43. Giuliano said to Johnny, "You again? I don't want to see you in Franklin Park. Go back to Northlake … get out of here," and he gave Johnny a ticket for being under the influence of marijuana. *Id*. at ¶ 44; Doc. 186 at ¶ 57. Both Ford and Giuliano were listed as the "officers" on the ticket, and Ford signed it as the "complainant." Doc. 186 at ¶ 56. The ticket ultimately was dismissed for non-suit. Doc. 173 at ¶ 44; Doc. 186 at ¶ 58. Ferris was not present for the May 31 incident, Velasquez has no

recollection of being present that day, and Johnny does not know if Ferris and Velasquez were there. Doc. 173 at ¶¶ 38-39.

At his deposition, Johnny did not recall receiving a ticket on May 31 or the disposition of the ticket, and he did not know if his companions that day possessed marijuana or were arrested for possession of marijuana. *Id*. at ¶¶ 40-41. When asked if Pack was in possession of marijuana, Johnny stated, "Whatever he had on him, I don't care and I don't want to know." *Id*. at ¶ 41.

### D.      Incident of November 24, 2011

On November 24, 2011, Thanksgiving Day, at about 4:30 a.m., several police officers entered Plaintiffs' home without a warrant. Doc. 186 at ¶¶ 60-61. Everyone in the house except Johnny was sleeping, and nobody let the officers in. *Id*. at ¶ 63. Johnny saw four officers in his brother's bedroom, and Enciso testified that he saw five to six officers in the house. *Id*. at ¶ 65. The officers handcuffed Johnny and took him outside, but he was not taken to any police station or charged with any crime and was later released. *Id*. at ¶ 64.

Ford was not present, and the only officer that Johnny knows was present that day was Giuliano. Doc. 173 at ¶¶ 46, 48. Quiroga is listed by Franklin Park's records as one of the three Franklin Park officers dispatched to the scene, and Giuliano testified that Quiroga was one of the four officers on the scene, along with Giuliano, Klos, and Fabiani. Doc. 186 at ¶¶ 66-67. Fabiani testified that another Franklin Park officer (not Giuliano) went inside the house and up the stairs with him and Klos. *Id*. at ¶ 68; Doc. 173 at ¶ 50. Quiroga testified that he arrived at the Flores' residence on November 24 as backup for the officers already present and that he maintained a position outside the house in the perimeter. Doc. 173 at ¶ 49. Quiroga's only recollection of any interaction with Johnny was seeing him lean against a police vehicle outside the house, and Johnny does not know who Quiroga is. *Id*. at ¶¶ 48, 50.

**Discussion**

I.      **Cook County Defendants' Motion**

       Cook County Defendants seek summary judgment on the § 1983 excessive force claim against Olle (Count I) and the state law indemnification claim against Cook County (Count XII). Cook County Defendants implicitly concede Johnny's being struck on the head and dropped on his face on February 5, 2011, qualify as excessive force.  They do argue that Johnny's "inconsistent claims simply fail to identify Defendant Olle as the Officer he alleges hit him with a baton" and that "Plaintiff does not identify who [the] officers [who carried him out and dropped him] were."  Doc. 139 at 5-6; *see also* Doc. 181 at 7-10.  As detailed above, the summary judgment record establishes that Johnny does not know who hit him that day, that Olle was not carrying a baton, that the height estimates given by Johnny for the officer who hit him do not match Olle's height, and that Johnny could not see who was carrying his feet when he was dropped.  However, the summary judgment record (viewed in Johnny's favor) also establishes that Olle was the first officer to enter the motel room and the arresting officer, and thus that Olle was on the scene when Johnny was struck on the head, handcuffed, and removed from the motel room.  Those facts are sufficient to forestall summary judgment.

       "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."  *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *see also Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) ("to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right").  "However, a defendant's direct participation in the deprivation is not required.  An official satisfies the personal responsibility requirement of section 1983 if [he] acts *or fails to act* with a deliberate or reckless disregard of plaintiff's

constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) (emphasis added). Relevant here, "in a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers … [and] it is possible to hold a named defendant liable for his failure to intervene vis-à-vis the excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him." *Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012) (internal citations omitted); *see also Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) ("police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so … [can be] held liable"). Accordingly, even if Olle did not hit Johnny on the head, kneel or bounce on his handcuffs, strike or slap him on the bed, or drop him on his face, his presence during these events and his failure to intervene can give rise to § 1983 liability. *See Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008) ("[i]f they should have realized that their colleagues were using excessive force they had a duty to intervene, for they were part of the arresting force"); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know … that excessive force was being used … or … that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to prevent the harm from occurring.").

Cook County Defendants nonetheless argue that summary judgment should be granted to Olle because Johnny "has failed to make any claims for failure to intervene" in the third amended complaint; in support, they cite to *Wagner v. Battiato*, 1989 WL 8539 (N.D. Ill., Jan. 27, 1989), for the proposition that a plaintiff may not raise a failure-to-intervene claim for the first time in a response to a summary judgment motion. Doc. 139 at 6; Doc. 181 at 11-14. This argument cannot be reconciled with *Miller v. Smith*, *supra*, which held that the plaintiff's excessive force claim should have survived summary judgment where the complaint broadly alleged that the defendant officers had "violated his rights under the 4th, 5th, and 14th Amendments by … using excessive force," 220 F.3d at 493, and the summary judgment record established that while the plaintiff could not identify his assailant, one of the defendant officers had attacked him while the other defendant officers stood by. *See id*. at 495 ("If Miller can show at trial that an officer attacked him while another officer ignored a realistic opportunity to intervene, he can recover. Since he alleges facts to support these claims, they should not have been dismissed."); *see also Rodriguez v. City of Chicago*, 2009 WL 4787937, at *1, *3-4 (N.D. Ill., Dec. 9, 2009) (denying summary judgment on a § 1983 unlawful seizure claim where "Wolanski and Zadura … were present during the relevant events," explaining that "[e]ven if Plaintiff could not identify the threatening officer … her § 1983 claim still survives summary judgment because a reasonable factfinder could find Wolanski and Zadura liable under § 1983 for standing by and doing nothing to prevent the violation of Plaintiff's rights").

Here, the third amended complaint alleges that Olle violated Johnny's rights under the Fourth and Fourteenth Amendments when "[o]ne or more of the above Defendants used force on JOHNNY FLORES." Doc. 66 at ¶¶ 35, 58-60. And the summary judgment record establishes that while Johnny could not identify Olle as the officer who struck or dropped him, Olle was

present on the scene and did not intervene.  It follows under *Miller* that the third amended complaint's failure to expressly articulate a failure-to-intervene theory is not fatal to Johnny's excessive force claim against Olle.

With respect to Johnny's handcuffing, Cook County Defendants argue that "Plaintiff cannot show that Officer Olle was the person he alleged kneeled on [h]is handcuffs" and, in the alternative, that the use of handcuffs on Johnny was reasonable, not excessive.  Doc. 139 at 7-9; Doc. 181 at 11.  The first argument is rejected for the reasons just given.  Because Olle, the arresting officer, was on the scene when another officer allegedly kneeled on Johnny's handcuffs and struck and slapped him while he was being handcuffed, Olle may be liable for his failure to intervene.  *See Sanchez*, 700 F.3d at 925-26; *Miller*, 220 F.3d at 495.

The second argument fails as well.  "The existence of probable cause is necessary but not sufficient for an arrest to be reasonable; the reasonableness of an arrest depends both on its justification *and* the manner in which it was effectuated."  *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (emphasis added); *see also United States v. Watson*, 558 F.3d 702, 704 (7th Cir. 2009) ("There are cases in which, although the police have every right to … arrest a person …, the manner in which they do so violates the Fourth Amendment.  The usual case is that of the use of excessive physical force to effect an arrest.").  "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  To determine the reasonableness of the force used, the court examines the facts as a reasonable officer on the

scene would have viewed them, recognizing "that officers often need to make split-second judgments based on rapidly developing events." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir. 2007)).

The court cannot conclude on the summary judgment record, with all factual disputes resolved in Johnny's favor, that the degree of force applied in handcuffing him was reasonable. As soon as the officers entered the motel room, Johnny put his hands in the air and turned around to show that he was not aggressive. Doc. 182 at ¶ 54. He did not resist arrest or attempt to flee, and the underlying crimes at issue—obstruction of ID and underage consumption of alcohol— were not severe. Despite all this, while Johnny's hands were handcuffed behind his back, an officer's knee kept "bouncing" on the handcuffs "with all his weight on it," causing the handcuffs to click tighter and tighter, *id.* at ¶ 62; Doc. 158 at ¶¶ 34-37, and Johnny also felt someone strike him once on his left side and someone slap him five to eight times, Doc. 182 at ¶¶ 64-65. During this time, Johnny was cooperating and no officer needed to use any force beyond handcuffing him. *Id.* at ¶¶ 60, 86.

Settled law holds that taking punitive actions once a suspect has been handcuffed and subdued is excessive force. *See Green v. Chvala*, __ Fed. App'x __, 2014 WL 2925182, at *3 (7th Cir. June 30, 2014) ("once a suspect is subdued, violent force can be excessive … [and b]ecause Green has alleged that Chvala applied significant force after he was unable to resist, he states a claim for relief"); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) ("[p]rior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects … [and] it was well-established in 2007 that police officers cannot continue to use force once a suspect is subdued"); *Gregory v. Oliver*, 226 F. Supp. 2d 943, 950 (N.D. Ill. 2002) (holding that it was clearly established that a

leg sweep by an officer on a handcuffed suspect was excessive force); *Taylor v. Kveton,* 684 F. Supp. 179, 185 (N.D. Ill. 1988) (holding that defendant officers were not entitled to qualified immunity because "no reasonable officer would have believed that his actions in kicking an unresisting [plaintiff] ... were lawful under the Fourth Amendment reasonableness standard."). Settled law also holds that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury. *See Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002). Accordingly, on the summary judgment record, the officers' actions during and after handcuffing Johnny qualify as excessive force. *See Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) ("Officer Pauley's force in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable."); *Coleman v. City of Chicago*, 2011 WL 1542129, at *5 (N.D. Ill. Apr. 22, 2011) ("an excessive force claim must go to a jury when the plaintiff adduces evidence of significant pain resulting from handcuffing under circumstances where the need for restraint was light").

Finally, Cook County Defendants argue that Olle is entitled to qualified immunity. Doc. 139 at 9-10. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Huff v. Reichert*, 744 F.3d 999, 1004-05 (7th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Seventh Circuit asks two questions in determining whether a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right[,] and (2) whether that constitutional right was

clearly established at the time of the alleged violation." *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013).

Cook County Defendants address only the first question, arguing that because "Plaintiff cannot identify Defendant Olle as the officer he alleges hit him" and "Plaintiff also does not claim that he asked for his handcuffs to be loosened, that he had a pre-existing injury or that he was in pain," "Olle did not violate any of Plaintiff's constitutional rights and therefore he is protected by the doctrine of qualified immunity." Doc. 139 at 10. For the reasons discussed above, Cook County Defendants are wrong, at least on the summary judgment record and applying the summary judgment standard. Cook County Defendants do not address the second qualified immunity question—probably because they believe that the relevant constitutional principles were clearly established in February 2011—thereby forfeiting any argument they might have presented. *See Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) ("As the moving party, the [defendant] had the initial burden of identifying the basis for seeking summary judgment."); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("[w]hen a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on").

The argument for summary judgment on the state law indemnification claim against Cook County rests entirely on the argument that Olle deserves summary judgment on the excessive force claim against Olle. Because Johnny's § 1983 excessive force claim against Olle survives, so does the indemnification claim against Cook County.

## II.     Franklin Park Defendants' Motion

Plaintiffs do not oppose summary judgment on the following claims against the following Franklin Park Defendants: Count I against Giuliano, Ford, and Ross (§ 1983 excessive force on February 5, 2011); Count II against Giuliano and Franklin Park (state law battery on February 5,

2011); Counts III and IV against Ford and Jones (§ 1983 unreasonable search and seizure on April 19, 2011); Count VI against Ferris and Velasquez (§ 1983 unreasonable seizure on May 31, 2011); and Counts VIII, IX, and X against Ford (§ 1983 unreasonable search and seizure and state law trespass on November 24, 2011). Doc. 177 at 4, 5 & n.6, 6 n.7, 7 n.8, 9 n.9. Summary judgment accordingly is granted to those defendants on those claims.

For the § 1983 excessive force claim in Count I, Franklin Park Defendants argue that Henniger, Kaminski, and Witnik cannot be held liable under § 1983 because they were not identified as having personally applied the allegedly excessive force. Doc. 145 at 4-5. Like Olle, however, Henniger and Kaminski were on the scene and thus may be found liable under § 1983 based on their failure to intervene. *See Sanchez*, 700 F.3d at 925-26; *Miller*, 220 F.3d at 495. With respect to Witnik, it is undisputed that he "was not on the scene as he was the watch commander at that time," Doc. 173 at ¶ 11, which means that he is entitled to summary judgment on Count I. *See Clark v. Pilker*, 2014 WL 503859, at *2 (S.D. Ill. Feb. 7, 2014) ("According to Plaintiff's factual allegations, Defendant Hillerman was not present at any time while [the other defendants] choked and kicked him. He thus was not in a position to intervene to stop the attack … [and] no personal involvement in the attack, and thus no liability for any use of excessive force by the other Defendants."); *Heard v. City of Chicago*, 2013 WL 1337167, at *5 (N.D. Ill. Mar. 29, 2013) (granting summary judgment for the defendant officer on excessive force and battery claims where the officer "was not present for any incident of excessive force or battery"); *Williams v. Adams*, 2007 WL 2298417, at *4 (N.D. Ill. Aug. 3, 2007) (granting summary judgment on excessive force and false arrest claims in favor of defendant officers who were "not present and did not participate in the arrest of Plaintiff").

For the claims against Giuliano in Counts III-IV and VI,  Ford in Count VI, and Quiroga in Counts VIII-X, Franklin Park Defendants argue that: (1) Johnny did not stop at the stop sign when Giuliano pulled him over on April 19, 2011; (2) Giuliano did smell burned cannabis during the April 19, 2011 stop; (3) Giuliano did not grab Johnny's testicles during the April 19, 2011 stop; (4) Giuliano and Ford did smell burned cannabis when they ticketed Johnny on May 31, 2011; and (5) Quiroga did not enter Plaintiffs' home on November 24, 2011.  Doc. 145 at 5-9. All of these factual issues are genuinely disputed on the summary judgment record, which precludes summary judgment.  *See Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011) ("It is not for [the court] … to judge the credibility of … competing versions [of fact]—that is a question for the jury."); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) ("district courts presiding over summary judgment proceedings may not weigh conflicting evidence, or make credibility determinations, both of which are the province of the jury") (internal quotation marks and citations omitted); *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) ("The court may not … decide [on summary judgment] which testimony is more credible."); *Payne*, 337 F.3d at 770 ("summary judgment cannot be used to resolve swearing contests between litigants"); *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) ("Not surprisingly, Margherone recalls these events differently, but summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute.").

Finally, Franklin Park Defendants seek summary judgment on Count VII, the state law malicious prosecution claim arising from the marijuana ticket issued on May 31, 2011.  Doc. 145 at 7-8.  "Under Illinois law, the elements of malicious prosecution are (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiffs;

(3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Franklin Park Defendants argue that Plaintiffs failed to adduce sufficient evidence on the second and fifth elements.

It is necessary to consider only the fifth element, as the Local Rule 56.1 statements and responses fail to set forth any facts showing that Johnny sustained any damages from the ticket. It is true that the third amended complaint alleges that Johnny experienced "humiliation, indignity, … emotional distress … and lost income" due to the ticket. Doc. 66 at ¶ 55. However, a complaint is not evidence and cannot be used to forestall summary judgment. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Once a party has made a properly supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)). Franklin Park Defendants therefore are entitled to summary judgment on Count VII.

### Conclusion

For these reasons, Cook County Defendants' motion is denied, and Franklin Park Defendants' motion is granted in part and denied in part. Summary judgment is granted on Count I to Giuliano, Ford, Ross, and Witnik; on Count II on its entirety; on Counts III and IV to Ford and Jones; on Count VI to Ferris and Velasquez; on Count VII in its entirety; and on Counts VIII, IX, and X to Ford. The case will proceed to trial on the following counts: Count I against Camp, Kaminski, Henniger, and Olle; Counts III and IV against Giuliano and Camp; Count V against Giuliano; Count VI against Giuliano and Ford; Counts VIII and IX against Fabiani, Klos, Giuliano, and Quiroga; Count X against Fabiani, Stone Park, Klos, Giuliano, Quiroga, and

Franklin Park; Count XI against Franklin Park; Count XII against Cook County; and Count XIII

against Stone Park.

July 9, 2014 _____

United States District Judge